## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Kathryn Stone,

       Plaintiff,

     v.                          Case No. 1:10cv591

Twiddy & Company of Duck, Inc., *et al.*,    Judge Michael R. Barrett

       Defendants.

## <u>ORDER</u>

This matter is before the Court upon Defendant Estate of William J. Fields' Motion to Dismiss, or in the Alternative, to Transfer Venue (Doc. 16) and Defendant Twiddy & Company of Duck, Inc.'s Motion to Dismiss and, in the Alternative, to Transfer Venue (Doc. 17). Plaintiff filed a consolidated memorandum in opposition to Defendants' Motions. (Doc. 24.) Defendants each filed a filed a Reply. (Docs. 29, 30.)

## I.   <u>BACKGROUND</u>

This is a personal injury action. Plaintiff Kathryn Stone, a resident of Cincinnati, Ohio, broke her leg when she stepped off an unlit step at a vacation home located in the Outer Banks area of North Carolina. (Doc. 3, ¶ 17.) Stone was staying in the home with her extended family for a one-week period. (Id., ¶ 14.) Co-Defendant, Estate of William J. Fields ("the Estate"), is the owner of the vacation home and is domiciled in Virginia. (Id., ¶ 4.) The Estate engaged Co-Defendant Twiddy & Company of Duck ("Twiddy"), a North Carolina corporation, to serve as rental agent for the vacation home. (Id., ¶ 9.)

Twiddy has entered into annual property management and rental agency contracts

with a number of Ohio residents. (Doc. 25.) Twiddy contacts the owners of the vacation homes on a regular basis through emails. (See id.) These emails contain information about services offered by Twiddy, newsletters, as well as local information which may effect homeowners, such as hurricane evacuations. (Id.) Twiddy has also acted as a sales agent on a number of occasions for homes owned by Ohio residents. (Id.) Twiddy earned commissions as a result of these sales. (Id.)

Since 2006, Twiddy has signed over 5,000 rental agreements with Ohio residents. (Doc. 24-9, at 4.) Twiddy markets houses to former guests from Ohio by mailing information and sending emails to them. (Doc. 24-10, at 8.) Twiddy also maintains a website to advertise the vacation homes they represent. (Id.) Vacation rental agreements are either mailed or emailed. (Id. at 9.)

Twiddy rented the vacation home owned by the Estate to Plaintiff's sister, Mary Holter, a Cincinnati, Ohio resident. (Doc. 3, ¶ 14; Doc. 24-1, ¶ 1.) At the time of the contract, Holter disclosed the names of the eleven members of Plaintiff's extended family who would be staying at the house. (Doc. 24-7, Kathryn Stone Aff., ¶ 11.) Seven of those extended family members, including the Plaintiff and Holter, resided in Cincinnati, Ohio. (Id., ¶ 4.)

II.  **ANALYSIS**

In their Motions to Dismiss, Defendants argue that Plaintiff's claims should be dismissed for lack of personal jurisdiction and improper venue, or in the alternative, should be transferred to another venue. In addition, the Estate argues that the claims against it should be dismissed for the failure to state a claim.

2

A.    **Motion to Dismiss Standard**

The plaintiff bears the burden of proving personal jurisdiction exists. *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing Weller v. Cromwell Oil Co., 504 F.2d 927, 930 (6th Cir. 1974)). When the Court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, the plaintiff "'need only make a prima facie showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002)) (internal citation omitted). The plaintiff can make this prima facie showing by "'establishing with reasonable particularity sufficient contacts between [the Defendant] and the forum state to support jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887 (quoting Provident Nat'l Bank v. California Savings Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)). However, "where, as here, 'the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction,' the prima facie 'proposition loses some of its significance.'" *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (quoting Int'l Techs. Consultants v. Euroglas S.A., 107 F.3d 386, 391 (6th Cir. 1997)).

In reviewing a motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting Directv, Inc. v. Treesh, 487 F.3d

471, 476 (6th Cir. 2007)).  "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009).  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 1949 (quoting Twombly, 550 U.S. at 556).

### B.    Personal Jurisdiction

The Sixth Circuit has established a two-step inquiry to determine whether a federal district court sitting in a diversity-of-citizenship case can exercise personal jurisdiction over a defendant: (1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause.  *CompuServe*, 89 F.3d at 1262.

The Sixth Circuit has explained that there are two kinds of personal jurisdiction: general and specific jurisdiction.  *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) ("Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state . . . or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to

the defendant's contacts with the forum."). Plaintiff argues that both general and specific jurisdiction exist in this case. However, Plaintiff also recognizes that there has been some debate as to whether Ohio courts recognize general jurisdiction. *See Indus Trade & Technology, LLC v. Stone Mart Corp.*, 2011 WL 6256937, *2, n.1 (S.D.Ohio Dec.14, 2011) (describing split on whether general personal jurisdiction is available under Ohio law). The Sixth Circuit has recently stated that "under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute." *Conn*, 667 F.3d at 718. Accordingly, this Court will only analyze whether specific jurisdiction over Defendants exists.

### 1. Ohio's long-arm statute

In arguing that specific jurisdiction exists, Plaintiff relies on two provisions of Ohio's long-arm statute to establish personal jurisdiction:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
>  . . .
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

Ohio Rev. Code § 2307.382(A). Plaintiff acknowledges that the Estate did not directly act or transact business in Ohio. Instead, Plaintiff argues that the Estate acted through Twiddy, who acted as an agent for the Estate. Because a lack of personal jurisdiction over

Twiddy will necessarily mean a lack of personal jurisdiction over the Estate, the Court will only focus its analysis on Twiddy.[1]

The Court finds that personal jurisdiction is not proper under Section 2307.382 (A)(4). As one Ohio court has explained: "The fact that plaintiffs have continued to suffer the effects of the accident on their return to Ohio, or have received medical treatment for their injuries in Ohio, does not give rise to jurisdiction." *Hunter v. Mendoza*, 197 F. Supp. 2d 964, 968 (N.D. Ohio 2002). Here, even though Plaintiff continued to suffer the effects of the accident after she returned to Ohio, Plaintiff's injury occurred in North Carolina.

Turning to Section 2307.382(A)(1), the Ohio Supreme Court has explained that this provision "is very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 481 (1990); *see also Brunner v. Hampson*, 441 F.3d 457, 464 (6th Cir. 2006) ("[t]he term 'transacting any business' as used in . . . the statute . . . will be given broad interpretation.") (quoting Ricker v. Fraza/Forklifts of Detroit, 828 N.E.2d 205, 209 (Ohio Ct. App. 2005)). However, mere solicitation of business does not constitute transacting business in Ohio for purposes of establishing jurisdiction under Section 2307.382(A)(1). *U.S. Sprint Comm. Co., Ltd. P'ship v. Mr. K's Food, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994).

Ohio courts have found that the use of the internet to "transact business" in Ohio can result in application of Ohio's long-arm statute. *Ashton Park Apts., Ltd. v. Carlton-*

---

[1]As this Court has explained, where a principal ratifies the agent's conduct, "[a]n agent's contacts with a forum may be imputed to the principal for purposes of establishing personal jurisdiction." *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 2011 WL 6293323, *8 (S.D. Ohio Dec. 15, 2011) (citing McFadin v. Gerber, 587 F.3d 753, 761 (5th Cir. 2009)).

*Naumann Constr., Inc.*, 2009 WL 4446934, *4 (Ohio Ct. App. Dec. 4, 2009) (citing Parshall v. PAID, Inc., 2008 WL 2553098, *3 (Ohio Ct. App. June 26, 2008) and Malone v. Berry, 881 N.E.2d 283, 287 (Ohio Ct. App. 2007)).   To determine whether internet activity establishes jurisdiction, courts have used the *Zippo* test, developed in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997).  *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010), *cert. denied*, 131 S. Ct. 3089 (2011). The *Zippo* test:

> established a "sliding scale" approach to Internet-based jurisdiction whereby the level of interactivity of the website is examined to determine whether the exercise of personal jurisdiction is proper.  At one end of the scale are "situations where a defendant clearly does business over the Internet."  . . . At the other end of the *Zippo* scale are informational websites.

*Id.* (quoting Zippo, 952 F.Supp. 1124).  Accordingly, Ohio courts have held that a passive Internet website "that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction."  *Edwards v. Erdey*, 770 N.E.2d 672, 678 (Ohio Ct. Com. Pl. 2001).

The Court takes judicial notice that the current version of Twiddy's website allows visitors to browse for homes, check prices and availability, sign a rental agreement, and pay for the rental for a home.  The parties have not specifically provided evidence of the level of interactivity of Twiddy's website in August of 2010 when this action was filed. However, Stone's sister, Holter, explains in her affidavit that she has entered into approximately seven rental contracts for vacation homes with Twiddy.  (Doc. 24-1, ¶ 8.) Holter explains that each year Twiddy sent her a catalog which showed the homes available for rental.  (Id., ¶¶ 3, 9)  Holter explains that once she found a property in which

she was interested, she would log onto the Twiddy website to rent the property. (Id., ¶ 10.) Holter explains that Twiddy would then email the agreement to her, and after Holter completed the necessary information, she would email the contract back to Twiddy. (Id., ¶¶ 10-12.)

The Court finds that in terms of interactivity, the Twiddy website lies somewhere in the middle of the *Zippo* sliding scale. The website is primarily a source for information, but it does allow Twiddy to do business over the internet in that it allows visitors to the site to rent homes. This contact through the website results in a rental contract.

"Where a non-resident defendant contracts with an Ohio resident to create an ongoing business relationship, such defendant is 'transacting any business' in Ohio pursuant to the plain meaning of R.C. 2307.382(A)(1)." *Total Quality Logistics v. Best Plastics, L.L.C.*, 930 N.E.2d 882, 887 (Ohio Ct. App. 2010) (citing Buflod v. Von Wilhendorf, LLC, 2007 WL 210790 (Ohio Com. Pl. Apr. 30, 2010)). However, the rental agreements between Twiddy and its customers are for short-term rentals. While Twiddy may have repeat customers, like Holter, there is no evidence that Twiddy has an "ongoing business relationship" with Ohio residents through its website. Therefore, the Court finds that Twiddy's website and the short-term rental contracts do not create personal jurisdiction under Section 2307.382(A)(1).

The same could be said regarding the transactions in which Twiddy acts as a sales agent. While the owners of the homes are Ohio residents, the sale of the home does not create an ongoing business relationship. Therefore, these transactions do not create personal jurisdiction under Section 2307.382(A)(1).

However, Twiddly has also entered into annual property management and rental

8

agency contracts with Ohio residents.  These contracts create a year-long obligation.  Ohio courts have identified two factors to help determine whether such contracts constitute transacting business with the meaning of the long-arm statute:

> The first factor is whether the non-resident defendant initiated the business dealing.  Logically, if the foreign corporation reached out to the Ohio corporation to create the business relationship, that is one factor that would go toward finding that the nonresident transacted business in Ohio.  The balance of the evidence must be considered to determine in which jurisdiction the parties undertook their discussions and communications and on what terms.  The second factor to be considered is whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio.  There must additionally be some continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state.

*Total Quality Logistics*, 930 N.E.2d at 887 (citations omitted).  Based on Twiddy's website, it appears that Twiddy has reached out to potential customers in Ohio.  The current website includes information about Twiddy's property management service and allows visitors to request a rental management package by telephone or by filling out a request form on the website.  However, the website does not specifically target Ohio residents.  Also, it appears that the property management and rental agency contracts are boilerplate and can be signed electronically.  Therefore, there is minimal, if any, negotiations or discussions conducted in Ohio.  While Twiddy maintains contact with home owners through email during the year, it does not appear that there are any terms of the contracts which affect Ohio.  Any obligations that Twiddy has under the property management and rental contracts would be necessarily be carried out in North Carolina where the home is located.  Therefore, the Court concludes that the property management and rental contracts do not create personal jurisdiction under Section 2307.382(A)(1).

2.    **Due Process**

In the alternative, the Court finds that Plaintiff has not met the necessary due process requirements.  To comport with due process, an exercise of personal jurisdiction requires that a defendant "have certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The Sixth Circuit has set forth a three-part analysis to determine whether jurisdiction accords with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (quoting Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

"The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.' *CompuServe*, 89 F.3d at 1263 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985)).  The contacts in this case consist of Twiddy's website, emails sent by Twiddy, and a printed catalogue sent by Twiddy.  Twiddy does not maintain an office in Ohio or send representatives to Ohio to negotiate contracts.

The Sixth Circuit has explained that the operation of a website may constitute the purposeful availment of the privilege of acting in a forum state "if the website is interactive

to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890. There is nothing about the Twiddy website which demonstrates that it is specifically intended to interact with residents of Ohio. The mere availability of a website falls short of purposeful availment. *Id.*

Similarly, email and telephone communications alone do not establish jurisdiction. *Barnabus Consulting Ltd. v. Riverside Health Sys., Inc.*, 2008 WL 2588579, *5 (Ohio Ct. App. June 30, 2008) (citing Joffe v. Cable Tech, 163 Ohio App.3d 479 (Ohio Ct. App. 2005)); *Epic Communications v. ANS Connect*, 2008 WL 2766285, *2 (Ohio Ct. App. July 17, 2008) (communications via e-mail, mail, and facsimile do not establish minimum contacts with Ohio). Courts have also held that the act of mailing a single payment to Ohio does not create a significant enough connection to Ohio to constitute a minimum contact with Ohio. *National Court Reporters, Inc. v. Rebecca N. Strandberg & Assoc.*, 2009 WL 1346641, *3 (Ohio Ct. App. May 14, 2009) (citing Communications Exhibits, Inc. v. Windstone Med. Packaging, Inc., 2006 WL 2771718, *2 (Ohio Ct. App. Sept. 26, 2006)).

Finally, "courts have rejected the argument that placing a product in a nationally distributed catalog, without more, establishes purposeful availment." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 2005 WL 2009273, *5 (E.D. Ky. Aug. 19, 2005) (citing Boit v. Gar-Tec Products, Inc., 967 F.2d 671 (1st Cir. 1992); Federal Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 659 (4th Cir. 1989)).

Based on the foregoing, the Court concludes that it does not have personal jurisdiction over Defendants.

11

C.    **Motion to Transfer Venue**

Defendants move to transfer venue to North Carolina pursuant to 28 U.S.C. § 1404, which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court where it might have been brought."  However, this Court may not transfer under section 1404(a) where personal jurisdiction over the defendants does not exist.  *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) (citing Martin v. Stokes, 623 F.2d 469, 474 (6th Cir. 1980)).  Instead, 28 U.S.C. § 1406(a) "provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought."  *Martin*, 623 F.2d at 474; *see also Taylor v. Love*, 415 F.2d 1118 (6th Cir. 1969) (district court has power to transfer complaint to another district even if it did not have personal jurisdiction), *cert. denied*, 397 U.S. 1023 (1970).  While Defendants brought their motions to transfer in the alternative in the event the motions to dismiss were denied, this Court may *sua sponte* order that a case be transferred, rather than dismissed pursuant to Section 1406.  *Thornton v. Walter*, 1985 WL 13711, *2 (6th Cir. Sept. 17, 1985) (per curiam).

Section 1406(a) provides that a district court with a case "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  There appears to be no dispute that this case could have been brought in North Carolina.  Twiddy is a North Carolina corporation, and was acting as the agent for the Estate, which is domiciled in Virginia, but owns the home in North Carolina where the injury occurred.  In addition, the Court finds

that the interests of justice favor transfer. In this case, process has been served, some preliminary discovery has been completed, and a settlement conference has been held. To dismiss this case would only result in the unnecessary duplication of fees and costs. In addition, dismissal may effectively bar Plaintiff's claims as a result of the applicable statute of limitations. Finally, Defendants will suffer no prejudice from the transfer. Defendants themselves sought transfer in the event that the Court did not dismiss Plaintiff's claims. Therefore, the Court concludes that transfer, as opposed to dismissal is the proper course of action.

III.    **CONCLUSION**

Based on the foregoing, Defendant Estate of William J. Fields' Motion to Dismiss (Doc. 16) is GRANTED and Defendant Twiddy & Company of Duck, Inc.'s Motion to Dismiss is GRANTED (Doc. 17) on grounds that this Court lacks personal jurisdiction over Defendants. In the interest of justice, this matter is hereby TRANSFERRED to United States District Court for the Eastern District of North Carolina, Northern Division.

**IT IS SO ORDERED.**

    */s/ Michael R. Barrett*
    Michael R. Barrett
    United States District Judge